## BOLLER et al. v. TEXAS EASTERN TRANSMISSION CORPORATION.
### No. 1243.

United States District Court
E. D. Missouri, S. E. D.
Nov. 30, 1949.

604

C. A. Powell, of Dexter, Mo., for plaintiffs.

Vinson, Elkins, Weems & Francis, of Houston, Texas, and Limbaugh & Limbaugh, of Cape Girardeau, Mo., for defendant.

HULEN, District Judge.

Plaintiffs' right to injunction and recovery of damages, based on a claim of private nuisance, i.e., noise, odor, smoke and vibration, resulting from operations of the booster station on defendant's pipe line at Oran, Missouri, is presented by the record in this case.

In 1937 plaintiffs acquired 160 acres of land, with usual farm improvements, near the village of Oran. Thereafter the "Big Inch" and "Little Inch" pipe lines were constructed about a quarter of a mile from plaintiffs' residence on the tract. In 1946 plaintiffs spent "over $6,000" improving their dwelling. In 1946 the pipe lines carried oil products and defendant's booster station was operated by electric motors. This operation did not interfere with the use of plaintiffs' property. Subsequently defendant acquired the two pipe lines and converted the power units in the booster station from electric motors to gas engines by installing fourteen one-thousand horsepower gas engines. Operation of the booster station after conversion is the basis of plaintiffs' action. It is claimed defendant's operation of the station resulted in loud explosions at irregular times, loud hissing noises similar to escaping steam, humming noise, vibration, and smoke and fumes, over and around plaintiffs' residence—all of which have created a private nuisance resulting in substantial depreciation in market value of plaintiffs' premises.

At the conclusion of the trial we announced that plaintiffs had failed to make an issue on their complaint that they had sustained damage by the concrete walls in their house being cracked due to operation of the booster station by defendant; also a failure of proof that plaintiffs' use of their property was interfered with by the customary and usual operation of the booster station due to humming noise. The reason for this ruling will be given later in this memorandum.

The remaining complaints result from causes not in dispute. Defendant admits its engines at times backfire, which causes the explosive noise; in bleeding its pipes there results a hissing noise similar to escaping steam; there are air vibrations that could be felt at plaintiffs' residence, caused by engine exhaust; and that it burns waste material on its premises causing dense black smoke. The real issue lies in the degree to which these incidents of defendant's use of its property affect plaintiffs' use of their property. Defendant does not controvert the evidence of plaintiffs as to expenditures in the erection of their residence and its use by them. Plaintiffs do not question that defendant has spent several million dollars renovating the pipe lines to change their use to natural gas and reconversion of the Oran station from electric motors to gas engines.

Defendant operates under an order of the Federal Power Commission. Through the Oran station passes its natural gas for the ultimate use of many large cities in the East. Any injunction resulting in restriction of the operation of the Oran station would interfere with compliance by defendant of the order issued by the Federal Power Commission, and delivery of gas to consumers in the East. Defendant takes the position, apparently acquiesced in by plaintiffs, that if its operation does interfere

with plaintiffs' use and occupancy of their dwelling, operation of said station is a greater comparative benefit to the public than it is allegedly injurious to plaintiffs. As a result injunctive relief in general is not in issue.

At the base of plaintiffs' case lies the question—have the plaintiffs suffered an injury to a legal right at the instance of defendant? Without an affirmative answer plaintiffs' case must fall. We are not presented with an issue of negligence. While negligence was charged in the complaint there is no proof to sustain it. It is not briefed by plaintiffs.

█ Plaintiffs must carry the burden of proof on the issues under submission, which means plaintiffs must prove their charge of nuisance by a preponderance or greater weight of the credible evidence. That is, by evidence which is more convincing and worthy of belief than that which is offered in opposition thereto.

In determining plaintiffs' rights in the use of their property we first consider the location of the two properties. What would be an actionable nuisance under one set of conditions would not be under another. While plaintiffs' residence is in the country, on a 160 acre tract of land, it is located less than two miles from the village of Oran. This village has passed from purely a rural community to the present locale of two industries, a hat factory and a mill. The dwelling of plaintiffs is one-half mile from one railroad and two miles from another. It is one-eighth of a mile from a much used concrete paved public highway. There is now being constructed, 500 yards from plaintiffs' dwelling, an electric generating plant of another utility.

█ With the location of plaintiffs' dwelling before us we pass to the question of the right of defendant to use its property within one-eighth mile of that residence, under the conditions described. While defendant has a right to use its property for any purpose it sees fit, it is nevertheless bound to use it so as not to do substantial injury or substantially interfere with use by plaintiffs of their property. An actionable nuisance may consist of those things charg-

ed by plaintiffs to result from defendant's operation of its booster station, but defendant's station cannot be said to be a nuisance per se. It becomes a nuisance only if it is not operated in a fair and reasonable way with regard to the rights of plaintiffs in the use and enjoyment of their home. Crutcher v. Taystee Bread Co., Mo.Sup., 174 S.W.2d 801. If the evidence establishes unfair and unreasonable use by defendant of its property one condition exists for relief to plaintiffs against defendant. A second condition is that the use of defendant of its property must result in an appreciable, substantial, tangible injury resulting in actual, material, physical discomfort to the plaintiffs. The injury to plaintiffs therefore must be real and not merely fanciful, or imaginary, or trifling. 4 Torts A.L.I. § 822; 39 Am.Jur., Nuisances, § 30.

█ I. Plaintiffs' suit is based on a number and variety of complaints in defendant's operation. We were impressed during the trial that plaintiffs' principal grievance was their belief that defendant had caused the concrete basement of their house to crack in two places and the concrete steps on the outside of the basement to separate from the basement walls. More testimony was offered on this issue than either of the other charges made by plaintiffs. We announced at the conclusion of the trial that in our opinion there was no issue on this charge because of a total lack of proof to connect this condition to defendant's operations. Plaintiffs' basement wall is cracked in two places; the steps are separated from the foundation. One of the plaintiffs testified that after a loud explosion from defendant's plant he made a tour of inspection and for the first time discovered the cracked concrete walls in the basement. There is no evidence as to how long the cracks had been there when first discovered. It is a matter of common knowledge that concrete walls crack in settling of footings and there was testimony that this was the cause of the cracks in the walls of plaintiffs' house. Viewing the evidence on this question most favorably to plaintiffs we find the damage to the basement walls could have been caused from

one of these two causes. Defendant would be liable for one, but would not be responsible for the other. The Court cannot speculate as to which of the causes produced the result. Not only do we think plaintiffs' evidence failed to sustain the burden of proof, but the greater weight of the evidence is that this damage was not caused by the defendant. We think a reasonable conclusion is that any explosion from defendant's plant of earth-shaking intensity that would have cracked the concrete walls of the basement of plaintiffs' house also would have caused some damage to the frame structure above the ground. No such damage is intimated.

▉ The evidence fails to sustain the allegation of a humming noise coming from the general operation of defendant's engines being audible at plaintiffs' house to extent claimed. Expert evidence was offered of the amount of noise coming from defendant's plant in its general operations, and while it may be audible at plaintiffs' house when the wind and atmospheric conditions are particularly favorable we fail to find plaintiffs suffered any real inconvenience from this source.

II. The evidence is uncontradicted that defendant has used the most modern equipment in the conversion of the booster station, that it is operated by experienced and competent employees and in the regular manner. Most of the employees live on the premises in dwellings near the building containing machinery.

The serious question presented by this record is whether the noise made by backfiring of the gas engines is a substantial and a physical discomfort to plaintiffs. That the engines do on occasion backfire and that the noise occasioned is similar to that of an automobile engine backfiring, but louder, is conceded by the defendant. A. H. Boller testified the explosions are "Sometimes extremely loud"; occurring— "Sometimes for a period they happen every day or night, and sometimes perhaps there will be a week or two would pass that there would be none"; effect of the explosions—"Sometimes it pretty near jars you out of bed * * * They had three explosions one night last week just around midnight. They certainly did wake me up.

* * * They were severe at times, and so severe that sometimes I was afraid to stay in my own building." Compared with an automobile backfiring, the explosions are "about four or five times as strong". At the time of trial the last explosion was "two or three weeks ago"; prior thereto "perhaps two weeks before that * * * there are no specific intervals." There was an explosion on the "28th of June at 1:20 p.m." This was later qualified—"there was some pounding down there like some engine pounding". "There was an explosion on the 27th of July, at 3:40 p.m. * * * A severe explosion on the 2d of July, at 8:00"; another "On the 10th of July, at 4:25 p.m."; another "On the 30th of August, at 9:08 a.m."; another "on the 28th of August * * * at 7:30 a.m." This latter noise was later described as "like popping off of a boiler, and like a boiler on a steam engine". Other witnesses testified to being present at plaintiffs' home on occasion when backfiring of the engines was heard.*

It is our opinion these explosions have been connected by plaintiffs with the damage to their basement—a condition we do not believe attributable to defendant's operations—and there has been a tendency on plaintiffs' part, due to this belief, to exaggerate the effect of the noise from backfiring of the engines. There are other people living about a mile from defendant's station and we think it fair to conclude that if the explosions were as loud and disturbing as plaintiffs would have the Court believe, they would be a subject for complaint by others living in the vicinity. No one so situated testified in this case. Mrs. Boller testified that the noise of the explosions had affected her physical condi-

---

* We note that at time of trial when the noise was disturbing plaintiffs they had a roomer in the house who apparently had selected the house of plaintiffs in preference to any that could be found in Oran. The roomer was not called as a witness.

tion. No medical testimony in that connection was submitted.

We do not presume to find plaintiffs have suffered no inconvenience from the operation of defendant's plant. Doubtless it would be more peaceful and quiet without its presence but we find plaintiffs' evidence falls short of sustaining the burden of proof of having suffered substantial, tangible injury, resulting in actual material and physical discomfort. We believe much of plaintiffs' worries on the subject are imaginary, fanciful, based on the mistaken belief there have been earthshaking tremors sufficient to crack the basement walls.

The remaining conditions about which plaintiffs complain fail to carry the import of the one just discussed, in so far as sustaining plaintiff's case. There have been hissing noises such as escaping steam which resulted from the process of cleaning pipes. This is necessary to convert the pipes from fluid conveyors to gas conveyors. This process is nearing completion and noise from this source will gradually become less frequent, if not terminate.

■ III. While the evidence shows plaintiffs suffer some annoyance from vibration, taking the record as a whole it is our conclusion that plaintiffs are mistaken as to the cause of the vibrations. Their case was based on vibrations passing through the ground such as to cause their house to shake. Such vibrations as plaintiffs experienced must be air vibrations and these are felt only when the wind is in the right direction. That the vibrations are air-borne and then only when the wind is blowing from the defendant's plant toward plaintiffs' house was established by the testimony of defendant's expert who measured the vibrations with scientific instruments. At the time he was in plaintiffs' home, and although the plant was in full operation, no vibrations of any character were experienced. Following the testimony offered by the defendant to this effect, and that plaintiff A. H. Boller was present, plaintiffs did not attempt to rebut the testimony. The air-borne vibrations affect loose windows or doors when conditions are such that they reach the plaintiffs' house but

we are unable to find the result is actual material, physical discomfort to plaintiffs.

It is our conclusion that plaintiffs have failed to sustain their burden of proof that defendant's operation of its plant created the nuisance in any of the foregoing respects entitling plaintiffs to relief.

■ IV. Even if the record sustained plaintiffs' charge of nuisance by defendant in the operation of its plant, plaintiffs' case on the question of damage must fail because of failure to carry the burden of proof on that issue. Apparently plaintiffs abandoned seeking relief by way of injunction since that phase of their pleading was not presented by brief. On the issue of damages the evidence is not convincing that there has been any depreciation in value of plaintiffs' premises by reason of the operation of defendant's plant. Plaintiffs' witness Heisserer, a farmer, testified that the farm had depreciated from a value of $17,000 to $11,000 as a result of the installation and operation of defendant's station. Defendant objected to the testimony of this witness on values because of lack of qualifications. We admitted the evidence although we think it of little probative value. George W. Pearman testified for plaintiffs that the value of plaintiffs' farm was $15,500. He was cashier of a bank in Oran and usually men in such positions in small towns are acquainted with land values. He was unable to give an opinion as to any reduction in value by reason of defendant's operation of its booster plant. One of the plaintiffs placed the value of their farm at $20,000 prior to defendant's reconversion of its plant, and $10,000 after. The farm cost plaintiffs $1,600 in 1937. They have expended approximately $7,200 on the dwelling and $1,600 for erection of a dairy barn. Defendant offered W. P. Renner and C. W. Henderson as witnesses on real estate values. Renner was engaged in the real estate business in Cape Girardeau. Henderson was a farmer living at Delta, Missouri, and operates a number of farms. He had served as a land appraiser on different occasions—at one time by appointment of Court. Both of these witnesses testified there was no reduction in the value of

plaintiffs' farm as the result of the conversion and operation of defendant's Oran plant. Viewing the evidence on the question of value as a whole, we conclude plaintiffs have failed to prove any reduction in value by the preponderance or greater weight of the credible evidence.

V. There is evidence that defendant's burning of waste oil does not meet the test of fair and reasonable use of its property. This waste oil is accumulated until a maximum amount is present in the burner pit, when it is set on fire. The burner pit is located with defendant's plant and the residences of the workmen between the pit and plaintiffs' house. We think it fair to conclude, even as a measure of self-protection, that defendant would try to burn waste oil at times when the wind would carry the smoke and fumes away from defendant's premises and dwellings occupied by its workmen. The wind cannot be depended upon to stay in one direction during the burning process. A fair and reasonable practice in this respect would be for defendant to burn the refuse oil or waste matter daily so as to reduce to a minimum the volume of smoke, and it is probable if this practice were carried out plaintiffs would have no basis of complaint on this score. Plaintiffs may have a judgment so ordering.

Let findings of fact, conclusions of law, and judgment be settled and submitted.